IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

BATTLE SPORTS SCIENCE, LLC, AND
ACTIVE BRANDS COMPANY, LLC,

    Plaintiffs,

 vs.

SHOCK DOCTOR, INC.,

    Defendant.

**8:16CV352**

**MEMORANDUM AND
ORDER**

   Battle Sports Science, LLC ("Battle Sports") and Active Brands Company, LLC
("Active Brands"), both Nebraska limited liability companies with their principal places
of business in Nebraska, bring this action against Shock Doctor, Inc. ("Shock Doctor"), a
Delaware corporation with its principal place of business in Minnesota.   In their
Amended Complaint (Filing No. 18), Battle Sports and Active Brands allege, among
other things, that Shock Doctor infringed U.S. Patent No. 8,931,488 (the "'488 Patent"),
U.S. Patent No. 9,333,413 (the "'413 Patent"), U.S. Design Patent No. D760,889 (the
"D'889 Patent"), and U.S. Trademark Registration No. 4,616,238 (the "Registered
Trademark") in violation of 35 U.S.C. § 271 and 15 U.S.C. §§ 1114, 1125.   Now before
the Court is Shock Doctor's Motion to Dismiss the Amended Complaint pursuant to Fed.
R. Civ. P. 12(b)(1) and 12(b)(6) or, in the Alternative, Transfer Venue pursuant to 28
U.S.C. § 1404(a) (Filing No. 21).   For the reasons explained below, the Motion is granted
in part and denied in part.

## I.  BACKGROUND[1]

   In or around 2011, Battle Sports, an athletic apparel and equipment company,
designed, developed, and marketed the Oxygen Lip Protector mouth guard ("OLP").
Convinced the OLP was like "no other mouth guard on the market" in terms of

---

[1]The factual background is primarily drawn from the Amended Complaint and
presented in the light most favorable to Battle Sports and Active Brands.   *See, e.g.,*
*Davenport v. Farmers Ins. Grp.*, 378 F.3d 839, 841 (8th Cir. 2004).

appearance and function, Battle Sports applied for the patents listed above to protect the innovative features of its product.

On January 13, 2015 and May 10, 2016, respectively, the U.S. Patent and Trademark Office issued the '488 Patent and the '413 Patent.  On July 5, 2016, Battle Sports received the D'889 Patent.  On June 20, 2016, Battle Sports sold, assigned, and transferred its "entire right, title and interest" in the OLP patents to Active Brands, "including all rights to damages for any and all past infringement of the any patents covering the" OLP.  That same day, Battle Sports also sold, assigned, and transferred to Active Brands its "entire right, title, and interest in and to" the Registered Trademark, including the right to past damages.

The OLP became a quick success.  Soon after sales began to grow, Shock Doctor began selling "a nearly identical mouth guard"—the Max Airflow.  In January 2015, Battle Sports advised Shock Doctor that the Max Airflow infringed Battle Sports's intellectual-property rights.  Despite that notice, Shock Doctor continued to sell the infringing Max Airflow in 2015 and 2016 with only "superficial changes."

On June 21, 2016, Battle Sports sued Shock Doctor in the District of Nebraska (8:16CV288), alleging patent infringement and other violations of its intellectual property rights under federal and state law.  On July 29, 2016, Battle Sports voluntarily dismissed that case pursuant to Federal Rule of Civil Procedure 41(a)(1).

On July 15, 2016, Battle Sports and an entity described as Active Brands, Inc. in the case caption and signature block and Active Brands, LLC in the body of the Complaint (Filing No. 1) sued Shock Doctor in the District of Nebraska, again alleging patent infringement and other violations of federal and state law.  On August 29, 2016, Shock Doctor moved to dismiss the Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief could be granted (Filing No. 14).  More specifically, Shock Doctor asserted the named

plaintiffs did not have constitutional standing to raise an intellectual-property claim based on the OLP because Battle Sports had "assigned away all of its ownership interests in the asserted intellectual property" and neither Active Brands, Inc. nor Active Brands, LLC was the current owner of the OLP intellectual property rights—which, according to the assignment documents, belonged to Active Brands.

On August 19, 2016, Shock Doctor filed its own intellectual-property claims against Battle Sports and Active Brands in two separate cases in the District of Minnesota.  The first Minnesota case, 16-cv-02907, alleges Battle Sports and Active Brands infringed a Shock Doctor patent for compression shorts (the "Minnesota shorts case").  The second Minnesota case, 16-cv-02908, sets forth Minnesota state-law claims of false advertising, deceptive trade practices, and unfair competition with respect to the OLP (the "Minnesota OLP case").  On September 28, 2016, Battle Sports and Active Brands moved to dismiss the Minnesota OLP case, arguing Shock Doctor's claims were compulsory counterclaims in this case.  They alternatively moved to transfer both Minnesota cases to Nebraska.  It appears those motions are still pending.

In response to Shock Doctor's Motion to Dismiss in this case, Battle Sports and Active Brands filed an Amended Complaint (Filing No. 18) on September 21, 2016.  The Amended Complaint listed Battle Sports and Active Brands as plaintiffs, deleting any reference to Active Brands, Inc. and Active Brands, LLC.  In light of the filing of the Amended Complaint, this Court terminated Shock Doctor's Motion to Dismiss (Filing No. 14).

On October 7, 2016, Shock Doctor filed the present Motion to Dismiss, or in the Alternative, Motion for Transfer.  Shock Doctor maintains the Court should dismiss this case with prejudice because (1) "the original plaintiffs lacked constitutional standing" and (2) the allegations in the Amended Complaint are insufficient to "state a plausible claim to relief."  Should the Court find dismissal unwarranted, Shock Doctor urges the

Court to transfer this case to the District of Minnesota to be tried with the Minnesota OLP case, which Battle Sports and Active Brands agree are related. Resisting dismissal and transfer, Battle Sports and Active Brands counter that jurisdiction and venue are proper in this Court and that the "amended complaint states a plausible claim under Rule 12(b)(6)."

## II.    DISCUSSION

### A.    Subject-Matter Jurisdiction

Shock Doctor argues this Court lacks subject-matter jurisdiction in this case because neither of the plaintiffs listed on the original Complaint owned the OLP intellectual property when they filed suit and thus lack constitutional standing to sue. *See Brooks v. City of Des Moines*, No. 15-2781, 2016 WL 6471225, at *1 (8th Cir. Nov. 2, 2016) ("Where a plaintiff lacks standing, the court has no subject matter jurisdiction."). A jurisdictional challenge under Rule 12(b)(1) can be presented as either a "facial" or "factual" challenge. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990); *accord 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378 (Fed. Cir. 2012).

In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn*, 918 F.2d at 729 n.6 (internal citations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (internal citation omitted). Shock Doctor states that it presents both facial (as to Battle Sports) and factual (as to Battle Sports and Active Brands) challenges, but both parties rely on matters outside the pleadings, so the Court will treat the challenges as factual attacks.

### 1.    Battle Sports

"The irreducible constitutional minimum of standing is that a plaintiff show (1) an injury-in-fact that (2) is 'fairly . . . traceable to the challenged action of the defendant and (3) is likely . . . to be redressed by a favorable decision in court." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011) (internal marks omitted)

(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *accord 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012).  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560.  "The party invoking federal jurisdiction bears the burden of establishing" standing.  *Id.* at 561.  Battle Sports does not satisfy that burden.

"Standing in a patent infringement case is derived from the Patent Act, which provides: 'A patentee shall have remedy by civil action for infringement of his patent.'"[2] *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001) (quoting 35 U.S.C. § 281).  "The word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d); *accord Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-40 (Fed. Cir. 2007).  "[T]o assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit*."  *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003).  Battle Sports contends it has standing because the Complaint "alleges direct injury in fact to Battle Sports during the period Battles Sports was the patentee."

But, as Shock Doctor points out, under the terms of the Patent Assignment Agreement, Battle Sports sold, assigned, and transferred its "entire right, title and interest" in the OLP patents to Active Brands, "including all rights to damages for any and all past infringement of the any patents covering the" OLP before filing the Complaint.  Thus, at the relevant time, i.e., the inception of the lawsuit, Battle Sports no longer had any interest in the patents or any past infringement claims.  *See*, *e.g.*, *Paradise Creations, Inc.*, 315 F.3d at 1309.  "If a party lacks title to a patent, that party 'has no

---

[2]Battle Sports's standing arguments are based solely on its alleged patent claims. Under 28 U.S.C. § 1338(a), this Court has "original jurisdiction of any civil action arising under any Act of Congress relating to patents."  Title 28 U.S.C. § 1295(a)(1) grants the Federal Circuit exclusive jurisdiction over appeals from final decisions in such cases.

standing to bring an infringement action' under that patent." *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (quoting *FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1571 (Fed. Cir. 1991)) (deciding a plaintiff did not have standing to sue for patent infringement because he had transferred title to the patent before filing suit); *accord Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) (concluding the plaintiff "lost standing to sue for infringement" when it assigned its patent and "all causes of action" related to the patent).

Battle Sports next claims it "has standing to pursue equitable claims for relief as the assignor of the patents." According to Battle Sports, it "has a direct interest in establishing the validity of the patents transferred because an adverse adjudication of the validity of the patents could form the basis of [a] claim arising out of the assignment." Battle Sports provides no authority supporting its assertion of standing on that basis, which is dubious at best, particularly given the nature of Battle Sports's assignment and the underlying allegations in this case.

The Court also rejects Battle Sports's undeveloped assertion that it "has an equitable interest in seeking enforcement of the patent as a corporate affiliate of Active Brands." Battle Sports's corporate disclosure statement lists Active Brands as a parent. Battle Sports's cited cases and meager argument do not convince the Court that Active Brands's ownership of Battle Sports creates some equitable interest in Battle Sports sufficient to confer standing under the circumstances of this case. *Cf. Digitech Image Techs., LLC v. Newegg Inc.*, No. 2:12-CV-01688-ODW, 2013 WL 1871513, at *4 (C.D. Cal. May 3, 2013) ("The Federal Circuit has never held that a corporate parent has equitable title in a subsidiary's patents."). Shock Doctor's motion to dismiss Battle Sports for lack of constitutional standing is granted.

## 2.     Active Brands

Active Brands maintains this Court has subject-matter jurisdiction because "Active Brands possessed constitutional and prudential standing at the time this case was

filed, and any amendment to the original complaint relates back to the date of filing." Noting its status "as the assignee of Battle Sports' patents and trademarks related to the [OLP]," Active Brands explains that the references to Active Brands, Inc. and Active Brands, LLC in the Complaint were "mere" misnomers of its corporate status. As Active Brands sees it, Federal Rules of Civil Procedure 15 and 17 allow Active Brands to "cure any misnomer of its corporate status" and relate the change back to the Complaint.

Under Rule 15(c)(1), which applies to proposed changes of plaintiffs as well as defendants, an amendment changing a party or the naming of a party relates back to the date of the original complaint if the defendant knew or should have known it would be asked to defend claims by the new plaintiff and would not be unfairly prejudiced by the change. *See*, *e.g.*, *Plubell v. Merck & Co.*, 434 F.3d 1070, 1072 (8th Cir. 2006); Fed. R. Civ. P. 15 Advisory Committee Notes (1966) (explaining "[t]he relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier," but that "the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs").

Rule 17(a)(1) requires that an action "be prosecuted in the name of the real party in interest." Under Rule 17(a)(3),

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

In support of its claim that its Amended Complaint relates back to the date of the Complaint under the Federal Rules, Active Brands relies on *Hilgraeve Corp. v. Symantec Corp.*, 212 F.R.D. 345, 346-47 (E.D. Mich. 2003), in which the court granted a patent holder's motion for leave to amend its complaint under Rules 15 and 17 to change the plaintiff's name from "Hilgraeve Corporation," an entity that did not exist, to the

7

plaintiff's correct name of Hilgraeve, Inc."  Rejecting the defendant's argument that the court lacked subject-matter jurisdiction because the named plaintiff did not have constitutional standing, the court concluded the proposed amendment "would merely correct a technical error in the complaint."  *Id.* at 348.

The court reasoned "[a] little common sense goes a long way to show that the complaint contains a mere misnomer, and that [Hilgraeve *Inc.* and Hilgraeve *Corporation*] are one and the same."  *Id.* at 348 (alteration in original) (quoting *Hemphill Contracting Co. v. United States*, 34 Fed. Cl. 82, 86 (Fed. Cl. 1995)).  The court also decided the amendment should relate back to the complaint under Rules 15(c) and 17(a) because the defendant failed to demonstrate any prejudice.  *Id.* at 348-49.  Active Brands urges the same result here.

In response, Shock Doctor (1) emphasizes that Active Brands has to prove that it had constitutional standing "when the original complaint was filed," *see*, *e.g.*, *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005) ("Standing must be present at the time the suit is brought."), and (2) argues Active Brands "cannot cure a defect in subject matter jurisdiction by amending the Complaint," *see*, *e.g.*, *Paradise Creations, Inc.*, 315 F.3d at 1310 ("[A] defect in standing cannot be cured after the inception of the lawsuit.").  According to Shock Doctor, Rules 15 and 17 do not affect the jurisdictional analysis in this case because, under Federal Rule of Civil Procedure 82, the Federal Rules do not expand the jurisdiction of this Court.

With respect to *Hilgraeve*, Shock Doctor argues the case is contrary to "prevailing circuit authority regarding standing and is factually distinguishable from this case for multiple reasons."  More specifically, Shock Doctor asserts *Hilgraeve*, unlike this case, (1) "did not involve any attempt by the plaintiff to rely on a defective complaint to prevail in a venue fight"; (2) involved a risk of injustice resulting from the defendant's delay in raising the standing issue; (3) involved an understandable mistake by the

plaintiff; and (4) implicated the strong judicial preference for decisions on the merits. According to Shock Doctor, Active Brands is to blame for its repeated failure to establish standing and can "still get adjudication on the merits" but will simply lose its preferred venue. Relying on *PE Corp. v. Affymetrix, Inc.*, No. CIV. A. 00-629-SLR, 2001 WL 1180280, at *2-3 (D. Del. Sept. 27, 2001), Shock Doctor contends "courts have expressly rejected any attempt to claim priority back to a complaint that named the wrong plaintiff and therefore failed to establish jurisdiction."

Although the peculiarity of a plaintiff filing suit under the wrong name makes controlling authority a little hard to come by, Active Brands ultimately has the stronger position on this issue. Shock Doctor is correct that standing must exist "at the time the suit is brought," *Sicom Sys., Ltd.*, 427 F.3d at 975-76, and that "a defect in standing cannot be cured after the inception of the lawsuit," *Paradise Creations, Inc.*, 315 F.3d at 1310. But Shock Doctor's application of those principles to the unusual facts of this case is flawed. In the Court's view, Shock Doctor unduly focuses on the allegations in the original Complaint and mistakes a simple defect in pleading—since corrected in the Amended Complaint—for an incurable defect in standing.

Prompted by Shock Doctor's first Motion to Dismiss, Active Brands filed an Amended Complaint as a matter of course under Rule 15(a)(1). *See also* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). "[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."[3] *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007);

---

[3]The Amended Complaint generally supersedes the Complaint, which "no longer performs any function in the case," except that the date on which the Complaint was filed controls if the Amended Complaint relates back under Rule 15(c). *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1365 (Fed. Cir. 2000) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed. 1990)); *see also Nolen v. Lufkin Indus., Inc.*, 469 F. App'x 857, 860 (Fed. Cir. 2012)

*accord Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008) (evaluating jurisdiction based on the allegations in the Amended Complaint). Because Shock Doctor raised this as a factual challenge, the Court also looks to matters beyond the Amended Complaint to determine if subject-matter jurisdiction exists, including the Patent Assignment Agreement, the Trademark Assignment Agreement, and the records Shock Doctor obtained from the Nebraska Secretary of State. *Osborn*, 918 F.2d at 729; *3M Co.*, 673 F.3d at 1378. In doing so, the Court must examine "'the state of things at the time of the action brought,'" ever mindful that "[t]he state of things and the originally alleged state of things are not synonymous." *Rockwell Int'l Corp.*, 549 U.S. at 473 (quoting *Mullan v. Torrance*, 9 Wheat. 537, 539 (1824) (Marshall, C.J.)); *accord Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364-67 & n.3 (Fed. Cir. 2010) (determining standing as of the date of the original complaint).

The Court's thorough examination of "the state of things" as of the date this case was filed reveals that, despite initially pleading under the wrong name, Active Brands is, in fact, the entity that (along with Battle Sports) filed the Complaint and unequivocally had "standing to sue on the date it file[d] suit." *Abraxis Bioscience, Inc.*, 625 F.3d at 1364. As Shock Doctor acknowledges and the record makes clear, Active Brands, pursuant to the assignment agreements, obtained Battle Sports's "entire right, title, and interest" in the OLP intellectual property before suit was filed. Those assignments "confer[red] constitutional standing on [Active Brands] to sue . . . in its own name." *Intellectual Prop. Dev., Inc.*, 248 F.3d at 1345. Put simply, Active Brands had standing when the Complaint was filed but made a simple mistake in drafting its Complaint—a mistake Active Brands corrected in the Amended Complaint.

---

(unpublished) ("Generally, an amended pleading supersedes the original for all purposes.").

Active Brands's undisputed rights as assignee make this case far different from cases like *Affymetrix, Inc.*, No. CIV. A. 00-629-SLR, 2001 WL 1180280, at *3, where the "patent owner did not have the right to file suit at all" and *Paradise Creations, Inc.*, 315 F.3d at 1310, where the purported plaintiff "held no enforceable rights whatsoever in the patent at the time it filed suit, and therefore lacked a cognizable injury necessary to assert standing under Article III of the Constitution."  It is that type of fundamental "defect in standing," not present here, that "cannot be cured" by amendment.  *Id.* at 1310.

Shock Doctor's standing arguments are largely premised on the notion that either Active Brands, Inc. or Active Brands, LLC—rather than a misnamed Active Brands— was actually the plaintiff at the inception of this case.  In Shock Doctor's view, Active Brands is trying to change plaintiffs and retroactively manufacture standing.  Shock Doctor's view is incorrect.  Correcting a party's name is not changing a party.[4]  Aside from the bare references to Active Brands, Inc. and Active Brands, LLC in the Complaint, there is no evidence to suggest any entity other than Active Brands was actually the plaintiff at the inception of this case.

To the contrary, despite the mistaken references to Active Brands, Inc. and Active Brands, LLC, the Complaint alleged that the plaintiff "Active Brands" was a Nebraska entity that "became a successor in interest to Battle Sports and all intellectual property rights associated with the [OLP] transferred to Active Brands" in or around June 2016.  Only Active Brands fits that description.  As noted above, the record establishes that Active Brands, a Nebraska limited liability company, obtained Battle Sports's rights in the OLP intellectual property by assignment agreements dated June 20, 2016.  In contrast, the Nebraska Secretary of State records Shock Doctor produced indicate Active Brands, Inc. and Active Brands, LLC are not valid entities (at least in Nebraska).  The record is entirely consistent with Active Brands's explanation that Active Brands was the plaintiff

---

[4]Indeed, Shock Doctor's argument would render Rule 15(c)(1)(C) meaningless where there is a misnomer; there would be nothing to relate back to if every misnomer required a finding that no standing existed.

from the beginning and that the references in the Complaint to other—very similarly named but apparently non-existent entities—were simple misnomers.

Active Brands has demonstrated that it had legal title to the OLP intellectual property at the inception of this suit and thus had standing.  Shock Doctor's Motion to Dismiss for lack of subject-matter jurisdiction is denied.

That leaves the question of whether Active Brands's Amended Complaint, which primarily corrects the name of an existing party, relates back to the date of the Complaint under Rule 15(c).  On this record, the Court has no trouble concluding that it does.  *See, e.g.*, *Hilgraeve Corp.*, 212 F.R.D. at 349; 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1496.1 (3d ed. 1998) (questioning whether "an amendment as a matter of course under Rule 15(a) automatically relate[s] back to the date of the original pleading" because it was unlikely the opposing party would suffer any prejudice "during the relatively short period allowed for interposing an amendment without leave of court").

Active Brands was a proper plaintiff to this action from the outset but sued in the wrong name.  To correct that error, Active Brands amended the Complaint as a matter of course under Rule 15(a) in response to Shock Doctor's Motion to Dismiss.  Shock Doctor was keenly aware of Active Brands's mistake and has suffered no material prejudice as a result; therefore, the Court finds the Amended Complaint relates back to the Complaint under Rule 15(c).[5]  *See, e.g.*, 6A Wright et al., *supra*, at § 1498.2 ("It would be a highly unusual case in which a technical misnomer . . . occurred but the defendant could claim prejudice or lack of knowledge of the mistake so as to avoid relation back.").

---

[5]Because the Court finds Active Brands had constitutional standing when the Complaint was filed and that the Amended Complaint relates back under Rule 15(c), the Court need not reach Active Brands's arguments that Rule 17 also applies to a situation like this where the proper party plaintiff files suit but uses the wrong name.

### B.      Failure to State a Claim

Shock Doctor moves to dismiss the Amended Complaint with prejudice for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). As noted by the parties, until abrogated on December 1, 2015, Federal Rule of Civil Procedure 84 and Form 18, which set forth a sample complaint, provided guidance as to what was necessary to plead direct patent infringement under the Federal Rules. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012). Although no circuit court has yet weighed in on what effect abrogation has on the proper pleading standards, it appears that most of the courts that have decided the issue have concluded the plausibility standard set forth in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), applies to claims for direct patent infringement. *See, e.g.*, *Robern, Inc. v. Glasscrafters, Inc.*, No. CV 16-1815, 2016 WL 3951726, at *5 (D.N.J. July 22, 2016); *RAH Color Techs. LLC v. Ricoh USA Inc.*, No. 2:15-CV-05203-JCJ, 2016 WL 3632720, at *4 (E.D. Pa. July 7, 2016). *But see Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-CV-0772-GMN-NJK, 2016 WL 199417, at *2 (D. Nev. Jan. 15, 2016). This Court predicts the Eighth Circuit will likewise apply the plausibility standard.

Federal Rule of Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The court accepts as true all factual allegations, but is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *McAdams v. McCord*, 584 F.3d 1111, 1113

(8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### 1.       Patent Infringement

Active Brands alleges Shock Doctor's Max Airflow mouth guard infringes the '488, '413, and D'889 patents.  Under 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  "To prove infringement, a plaintiff must prove the presence of each and every claim element or its equivalent in the accused method or device." *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1378 (Fed. Cir. 2011).

Shock Doctor first argues the Court should dismiss any claims related to the 2016 version of the Max Airflow because Active Brands "makes no detailed infringement allegations about" that product.  According to Shock Doctor, Active Brands's patent claims rely on a structure—a forward inner wall—that is not part of the 2016 Max Airflow.

With respect to the 2015 Max Airflow, Shock Doctor asserts that Active Brands's allegations are deficient because they fail to specify when Shock Doctor made, used, sold, or imported an infringing product and do not permit this Court to infer that the 2015 Max Airflow infringes each element of at least one claim.  Shock Doctor asserts Active Brands repeats the language of the utility patents but "fails to include sufficient description of how even the 2015 Max Airflow product satisfies that language."

Regarding the D'889 design patent, Shock Doctor contends the allegations do not set forth a claim that could satisfy the ordinary-observer test that applies to such claims. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc)

(holding "that the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed").  Under that test, a product infringes a design patent if "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design."  *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).

Shock Doctor complains the Amended Complaint provides "no factual allegations that identify any non-functional ornamental elements of [Active Brands's] design, how those ornamental design elements differ from the prior art, or where any elements of that ornamental design can be found in the 2015 Max Airflow Lip Guard."  According to Shock Doctor, "[i]nstead of supporting [Active Brand's] claims, the [Amended] Complaint's side-by-side comparison of the 2015 Max Airflow and the 'D889 Patent confirms that the two designs are 'plainly dissimilar' in multiple ways."  Giving several examples of differences, Shock Doctor asserts the design-patent claim is implausible.

Active Brands counters that Shock Doctor "engages in claim construction analysis which is premature and far beyond what *Iqbal/Twombly* demands to survive a motion to dismiss under Rule 12(b)(6)."  In Active Brands's view, Shock Doctor clearly understands Active Brands's theory of infringement and its element-by-element analysis but simply disagrees with that analysis.  Active Brands clarifies that, at this point, it has "only accused the 2015 Max Airflow of patent infringement" but suggests discovery is required to develop its claims, particularly with respect to "the technical features of competing products" and Shock Doctor's alleged design changes.

As to its design-patent claim, Active Brands contends Shock Doctor attempts to convert the Rule 12(b)(6) standard into a summary-judgment analysis and circumvent the role of the fact finder.  As Active Brands sees it, the OLP and Max Airflow are plausibly similar and the fact finder will have to determine whether the Max Airflow infringes the design patent "after claim construction, discovery, and expert testimony."

The Court agrees with Active Brands that Shock Doctor demands more of the Amended Complaint than *Twombly* and *Iqbal* require at this stage. *See, e.g.*, *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1372 (Fed. Cir. 2013) ("Federal Circuit precedent, the Court's rulings in *Twombly* and *Iqbal*, and Federal Rule 8, make clear that neither claim construction nor prior art is required to be included in the pleadings."). "*Twombly* and *Iqbal* require that a complaint for patent infringement contain sufficient factual allegations such that a reasonable court could, assuming the allegations were true, conclude that the defendant infringed." *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 936 (Fed. Cir. 2015) (unpublished); *see also Iqbal*, 556 U.S. at 678. The Amended Complaint meets that standard.

## 2.    Trade-Dress Infringement

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a federal cause of action for trade-dress infringement. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). "Trade dress is the total image of a product, the overall impression created, not the individual features." *Aromatique, Inc., v. Gold Seal, Inc.*, 28 F.3d 863, 868 (8th Cir. 1994). Trade dress "may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 132 (8th Cir. 1986) (*quoting John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983)).

To establish a claim for trade-dress infringement, the plaintiff must show (1) its trade dress is inherently distinctive or has "acquired distinctiveness through secondary meaning"; (2) its trade dress is primarily nonfunctional; and (3) the defendant's trade dress is sufficiently similar that it "would result in a likelihood of confusion in consumers' minds as to the source of the product." *Gateway, Inc. v. Companion Prod., Inc.*, 384 F.3d 503, 507 (8th Cir. 2004). "Secondary meaning occurs when 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product

rather than the product itself.'" *Id.* at 508 (alteration in original) (quoting *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000)).

Shock Doctor asserts the Court should dismiss Active Brands's trade-dress infringement claim because Active Brands has not plausibly alleged that its trade dress (1) "has acquired secondary meaning" as required for a product-design trade-dress infringement claim and (2) "is not functional." Shock Doctor also contends Active Brands has "not specifically identif[ied] a common set of elements comprising [its] trade dress." Shock Doctor acknowledges that Active Brands has alleged its trade dress has acquired secondary meaning and is not functional but maintains Active Brands's allegations are conclusory and "insufficient to state a plausible claim to relief."[6]

The Court disagrees. Legal conclusions—though insufficient standing alone—can provide the framework for a complaint, provided they are supported by factual allegations that raise the alleged right to relief above the speculative level. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013). In support of its trade-dress infringement claim, Active Brands alleges the Max Airflow infringes trade dress "characterized by a general overall appearance and commercial impression created through shape, color scheme and pictorial elements" that "serves to identify the origin and source of the" OLP. Active Brands provides a detailed list of primarily nonfunctional elements that it alleges make the OLP's trade dress distinctive and includes a series of photographs that clarify the basis for its trade-dress infringement claim. Active Brands alleges its trade dress identifies the origin and source of the OLP by virtue of its wide-spread use, popularity, advertising, and sales. The Court finds Active Brands

---

[6]Noting that Active Brands's "opposition brief completely fails even to respond to Shock Doctor's arguments [regarding] three of the seven counts in [the] Amended Complaint," Shock Doctor contends Active Brands "concedes that [it] cannot meet" the requisite "standards for several of [its] allegations." Under NECivR 7.1(b)(1)(C), "[f]ailure to file an opposing brief is not considered a confession of a motion." Though not a confession of the motion, not responding to certain issues or arguments obviously leaves the nonmovant more vulnerable to dismissal on those issues.

has pled sufficient facts "to nudge[] [its] claims" of trade-dress infringement "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3.   Trademark Infringement

Active Brands has a registered trademark for its oval-shaped "Battle" mark. Active Brands alleges Shock Doctor has infringed that trademark "by using an identical design in an identical location on the [Max Airflow]." Under 15 U.S.C. § 1114(1)(a), a defendant is liable for trademark infringement if, without consent, it uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" that "is likely to cause confusion, or to cause mistake, or to deceive." "[T]he essential question in any case of alleged trademark infringement is whether purchasers are likely to be misled or confused as to the source of the different products or services." *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1329 (8th Cir. 1984).

Despite acknowledging "that the likelihood of confusion inquiry is usually not resolved on a motion to dismiss," Shock Doctor argues Active Brands's trademark-infringement claims should be dismissed because Active Brands (1) violates the anti-dissection rule by claiming a trademark right in an oval standing alone that it does not have and (2) ignores obvious differences between the "Battle" mark and Shock Doctor's trademark. *See Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1054 (8th Cir. 2005) (explaining marks must be viewed in their entirety and compared "in a context that recognizes how consumers encounter the products and how carefully consumers are likely to scrutinize the marks"). In Shock Doctor's view, when the marks at issue in this case "are viewed in their entirety and in context, there is no plausible likelihood of confusion, and as a result, no plausible trademark infringement claim." (Quotation omitted). In short, Shock Doctor opines its mark is nothing like Active Brands's "Battle" mark.

Shock Doctor may or may not ultimately prevail on that factual question, *see ConAgra, Inc. v. George A. Hormel, & Co.*, 990 F.2d 368, 371 (8th Cir. 1993)

("[L]ikelihood of confusion is a factual question."), but the Court finds Active Brands's trademark-infringement claim is not so patently implausible as to require dismissal at this early stage.

### 4.      Unfair Competition and Unjust Enrichment

Active Brands's last two claims—for unfair competition and unjust enrichment—arise under Nebraska common law. *See*, *e.g.*, *John Markel Ford, Inc. v. Auto-Owners Ins. Co.*, 543 N.W.2d 173, 178 (Neb. 1996) ("[T]he common-law definition of unfair competition involves 'palming off' one's goods as the goods of another."); *ADT Sec. Servs., Inc. v. A/C Sec. Sys., Inc.*, 736 N.W.2d 737, 766 (Neb. Ct. App. 2007) ("We adopt the view that a monetary award based on the infringer's profits can be awarded to prevent unjust enrichment and to deter future infringement of a trade name."). In making those claims, Active Brands heavily relies on blanket incorporations of its prior allegations followed by just a handful of conclusory allegations regarding its state-law claims. Active Brands presents just three separate allegations of unfair competition and just one allegation of unjust enrichment.

Shock Doctor's Motion to Dismiss is likewise brief. Noting a claim for unfair competition under Nebraska law is nearly identical to a claim for infringement under the Lanham Act, Shock Doctor briefly asserts that the state-law unfair-competition claim should be dismissed "for the same reasons" as the federal infringement claims. As Shock Doctor sees it, Active Brands's unfair-competition and unjust-enrichment claims "lack an independent factual basis, as they rest entirely on [Active Brands's] other non-patent claims, so they fail just as the other non-patent claims fail."

Ordinarily, Active Brands's cursory state-law claims would be insufficient to state a plausible claim for relief. However, given Shock Doctor's position on the close correlation between the state and federal claims and the Court's determination that Active Brands has stated plausible infringement claims under federal law, the Court concludes the Amended Complaint, as a whole, contains sufficient factual content to give Shock

Doctor adequate notice of Active Brands's state-law unfair-competition and unjust-enrichment claims and the grounds upon which those claims rest.

Shock Doctor's Motion to Dismiss for failure to state a claim is denied.

## C.    Motion to Transfer

Shock Doctor alternatively requests that the Court transfer this case to the District of Minnesota pursuant to 28 U.S.C. § 1404(a), which permits a court to transfer a civil action "[f]or the convenience of the parties and witnesses" and "in the interest of justice." Based on its claim that the Complaint had no legal effect, Shock Doctor asserts the District of Minnesota is the proper venue for this case because Shock Doctor filed the Minnesota OLP case before Active Brands filed the Amended Complaint. *See Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993) ("To conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction.").[7]   Shock Doctor also maintains the relevant convenience and interest-of-justice factors under § 1404(a) favor transfer to Minnesota.  Active Brands takes the opposite view.

While the parties dispute which of them filed first and whether the Court should transfer this case, they agree that this case and the Minnesota OLP case are sufficiently related to be resolved together.[8]   They also agree that both Nebraska and Minnesota are

---

[7]"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 968 (8th Cir. 2013) (quoting *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 997 (8th Cir. 2005)).

[8]Active Brands, without any supporting authority, also proposes that the claims in the MN shorts case weigh against transferring this case, arguing that the pendency of the MN shorts case presents the identical witness convenience issues—but in reverse.  The Court is willing to accept the parties' conclusion that this case and the MN OLP case are parallel and should be considered together.  But it is not clear that the MN shorts case, which involves an entirely different product and patent, necessarily impacts the venue analysis in this case at all, much less in any material way. *See Nw. Airlines, Inc.*, 989 F.2d at 1006 (requiring "parallel litigation").

proper venues for this case, *see* 28 U.S.C. §§ 1391, 1400(b), and that the factors the Eighth Circuit examined in *Terra International, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 695-96 (8th Cir. 1997), should guide this Court's analysis of whether the circumstances of this case warrant transfer.[9]

Absent compelling circumstances, the first-filed rule generally gives venue priority to the party who filed suit first.  *See Nw. Airlines, Inc.*, 989 F.2d at 1005. However, the "rule 'is not intended to be rigid, mechanical, or inflexible.'"  *Id.* (quoting *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir. 1985)).  The Court must apply the rule "in a manner best serving the interests of justice."  *Id.* Similarly, "a transfer motion requires the court to consider the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors when comparing alternative venues."  *Terra Int'l, Inc.*, 119 F.3d at 695.

In assessing convenience, the Court considers "(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law."  *Id.*  Relevant interest-of-justice factors include "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law."  *Id.*

Shock Doctor maintains these factors and the circumstances of this case favor transfer to the District of Minnesota.  Noting the Federal Circuit has observed "the bulk

---

[9]The Eighth Circuit has avoided an "exhaustive list of specific factors to consider" but has approved the factors on which each of the parties in this case relies.  *See Terra Int'l, Inc.*, 119 F.3d at 691, 695-96.  The Eighth Circuit has also declined to decide whether a court's determination that a case warrants transfer under § 1404(a) provides compelling circumstances to vary from the first-filed rule.  *Id.* at 697 n.12.

of the relevant evidence usually comes from the accused infringer," *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009), Shock Doctor avers that most of the relevant evidence and paper documents related to the Max Airflow are in Minnesota as are key "witnesses with relevant knowledge of the development, marketing, financials, manufacturing, and regulatory compliance" of the Max Airflow.  In addition to a specific list of six Shock Doctor employees expected to testify, Shock Doctor identifies two Minnesota nonparty vendors Shock Doctor expects to provide pertinent information about the manufacturing of the Max Airflow.  According to Shock Doctor, the District of Minnesota would have subpoena power over those witnesses.  *See* Fed. R. Civ. P. 45.

Turning to the justice factors, Shock Doctor acknowledges Active Brands's interest in its choice of forum, but argues the convenience of trying this case in Minnesota with the MN OLP case outweighs that interest.  Shock Doctor also argues Active Brands's state-law claims do "not militate against transfer" because there are no choice-of-law issues and those claims "rise and fall with [Active Brands's] federal claims."  Shock Doctor asserts "both Minnesota and Nebraska are equally equipped to address" those claims and the case might even get to trial faster in Minnesota.

Active Brands responds that its "choice of forum should be given paramount consideration."  Agreeing with Shock Doctor that the Court should focus on nonparty witnesses, Active Brands contends—without providing any specific details of the potential witnesses or their likely testimony that—"[t]he testimony of the witnesses located in the District of Nebraska is highly likely to be more material and more important than any testimony proffered by any potential witnesses located in Minnesota."  According to Active Brands, its potential witnesses "may include former Active Brands employees who are not parties to this case."  With respect to records and documents, Active Brands again concedes their importance but asserts that Active Brands has documents related to Shock Doctor's allegations of (1) patent infringement in the MN shorts case and (2) false advertising in the MN OLP case.  As Active Brands sees it, the

parties stand on equal footing regarding the location of relevant evidence, giving Active Brands the slight edge on this factor because it filed first and sought transfer first.

Active Brands's evaluation of the justice factors directly contradicts Shock Doctor's view. Highlighting the number of pending cases and median number of cases per judgeship in each court, Active Brands contends the parties are more likely to receive a "speedy resolution of their multiple claims" in Nebraska. Active Brands also maintains that a Nebraska court will be more "at home" deciding the Nebraska common-law claims.

After careful review, the Court finds the circumstances in this case (1) warrant varying from the first-filed rule and (2) weigh in favor of transferring this case to the District of Minnesota under § 1404(a). While the Court affords considerable weight to Active Brand's priority in filing suit and its choice of its home forum, the Court finds those factors are outweighed by other important factors, including the availability and convenience of nonparty witnesses in Minnesota and the accessibility of key evidence that is central to resolving the complex infringement claims at the heart of this case.[10]

In particular, the Court finds Minnesota will be more convenient for the specific nonparty witnesses Shock Doctor identified as having manufactured the allegedly infringing Max Airflow in Minnesota. That factor is entitled to significant weight. *See, e.g.*, *Midvale Indus., Inc. v. Butler*, No. 4:15CV1650 JCH, 2015 WL 8479018, at *4 (E.D. Mo. Dec. 10, 2015) ("[T]he convenience of witnesses has been called 'the most powerful factor governing the decision to transfer a case.'" (quoting 17 James Wm. Moore, et al., *Moore's Federal Practice* § 111.13[1][f][i] (3rd ed. 2010))); *Bomkamp v. Hilton Worldwide, Inc.*, No. 4:13-CV-1569 CAS, 2014 WL 897368, at *8 (E.D. Mo. Mar. 6, 2014) ("[C]onvenience of the witnesses, is considered the most important [factor] and is entitled to the most weight in the analysis.").

---

[10]Digital storage and electronic document transmission "may lessen the inconvenience of document handling," but the physical location of evidence remains a relevant factor. *In re Apple, Inc.*, 602 F.3d 909, 914 (8th Cir. 2010) (per curiam).

Active Brands does not deny that Minnesota is the primary place where Shock Doctor's alleged misconduct occurred or that the witnesses Shock Doctor named will likely possess important information about the central issues in this case. Rather, Active Brands nebulously contends testimony from its unidentified Nebraska witnesses "is highly likely to be more material and more important than any testimony proffered by any potential witnesses located in Minnesota." The statement is unsupported and unconvincing. And Active Brands's bare assertion that its potential witness list *may* include unnamed nonparty former employees adds very little weight, if any.

Many of the remaining factors either do not apply or do not weigh heavily in favor of one party or the other. While judicial economy may favor hearing this case and the MN OLP case together, *see Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990), both potential venues are equally capable of applying federal law and the relevant Nebraska and Minnesota law that applies to the various state-law claims in these cases. "[F]ederal courts often are called upon to apply the law of other states." *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, No. CIV 09-720(RHK/JJG), 2009 WL 1684428, at *6 (D. Minn. June 16, 2009). As evident from the Amended Complaint, Active Brands's common-law claims for unfair competition and unjust enrichment are neither so unique to Nebraska law nor so complicated as to be beyond the ready grasp of the Court's esteemed colleagues in Minnesota. The Court is also confident—notwithstanding the parties' conflicting interpretations of caseload statistics—that the parties will receive a timely decision whether this case is tried in Nebraska or Minnesota.

In light of the foregoing, the Court finds that the circumstances in this case, on balance, support transfer to the District of Minnesota.

## III.   CONCLUSION

Active Brands has constitutional standing to sue Shock Doctor in federal court for allegedly infringing its intellectual-property rights and has adequately stated claims upon

which relief can be granted.  However, the Court finds Shock Doctor has met its burden of proving that transfer is warranted. Accordingly,

IT IS ORDERED:

1.    Shock Doctor, Inc.'s Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the Alternative, Transfer Venue pursuant to 28 U.S.C. § 1404(a) (Filing No. 21) is GRANTED in part and DENIED in part as follows:

A.    Shock Doctor, Inc.'s Motion to Dismiss for lack of subject-matter jurisdiction is GRANTED with respect to Battle Sports Science, LLC but DENIED in all other respects.  Battle Sports Science, LLC is DISMISSED without prejudice.

B.    Shock Doctor, Inc.'s Motion to Dismiss for failure to state a claim is DENIED.

C.    Shock Doctor, Inc.'s alternative Motion to Transfer is GRANTED.

3.    The Clerk of Court shall transfer this action to the United States District Court for the District of Minnesota.

Dated this 2nd day of December, 2016.

BY THE COURT:

s/ *Robert F. Rossiter, Jr.*
United States District Judge